IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CONSTANT CONTACT INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-1467-GMS |
| ) | |
| UMBANET INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

### I. INTRODUCTION

On September 28, 2012, the defendant Umbanet Inc. ("Umbanet") filed suit against one of the plaintiff Constant Contact Inc.'s ("Constant Contact") customers, Englewood Wine Merchants ("EWM"), in the District of New Jersey (the "New Jersey action"). (D.I. 1 at ¶ 3.) Umbanet alleged that EWM infringed U.S. Patent Nos. 7,076,730 and 7,444,374 (collectively, "the Patents-in-Suit") by using Constant Contact's "Email Marketing" service. (Id.)[1] On November 14, 2012, Constant Contact filed a declaratory judgment action before this court seeking, among other things, an order declaring that the patents-in-suit are invalid and that none of Constant Contact's customers are infringing the patents-in-suit by using Constant Contact's e-mail marketing products. (Id. at ¶¶ 17, 19, 23, 25.)

Presently before this court is Umbanet's motion to dismiss Constant Contact's declaratory judgment complaint. (D.I. 9.) In its motion, Umbanet asserts that this court lacks

---

[1] As support for its infringement allegations against EWM, Umbanet attached an email and underlying source code that states on its face that it was sent via Constant Contact's Email Marketing services. (D.I. 1 at Ex. 3); (D.I. 13 at Exhibit B) (identifying "constantcontact.com").)

subject matter jurisdiction over the case, or in the alternative, Umbanet moves to transfer this case to New Jersey. (*Id.*) Because the court concludes that there is sufficient reason to transfer the instant action to New Jersey, the court will grant the motion to transfer and does not opine on the subject matter jurisdiction basis of the motion.

## II. BACKGROUND

Constant Contact is a Delaware corporation with its principal place of business in Massachusetts. (D.I. 13 at 2.) In its answering brief in opposition to Umbanet's motion to dismiss, Constant Contact describes itself as a "leading provider of email marketing services, including its 'Email Marketing' product, which allows customers to send email newsletters to targeted audience." (*Id.*) Among Constant Contact's customers is EWM, a small wine retailer. (*Id.*) EWM is incorporated in New Jersey and has its place of business in New Jersey. (D.I. 1, 12-5849-RMB-KMW (D.N.J.).) EWM uses Constant Contact's "Email Marketing" service for EWM's own e-mail marketing and this is the basis of Umbanet's suit against EWM.[2] (*Id.*; D.I. 10 at 3.)

Umbanet is a small Delaware corporation, consisting of a single employee, the inventor, who lives in New York City. (D.I. 14 at 9.) Umbanet develops products based on the software and email technologies disclosed in the Patents-in-Suit. (D.I. 10 at 2.) The Patents-in-Suit are in turn related to "novel electronic mail systems and methods of providing different and additional functionality other than simple text." (*Id.*)

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the

---

[2] Constant Contact has agreed to indemnify EWM for use of Constant Contact's email software, as well as for potential liability arising out of Umbanet's claims against EWM. (D.I. 13 at 3.)

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Consistent with relevant case law, the court employs a two-step inquiry in order to resolve a motion to transfer. *See, e.g., Smart Audio Techs., L.L.C. v. Apple, Inc.,* 910 F. Supp. 2d 718, 724 (D. Del. 2012). The court first determines "whether the action could have been brought in the proposed transferee venue". *Id.; L'Athene, Inc. v. Earthspring LLC,* 570 F. Supp. 2d 588, 591 (D. Del. 2008). Under 28 U.S.C. § 1391(b)(2), venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." The purpose of substantiality is "preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transm'n Sys. v. Martino,* 36 F.3d 291, 294 (3d. Cir. 1994). Thus, due to the substantiality requirement, "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough[]" to establish that venue is proper in a particular jurisdiction. *Id.* at 294.

After determining whether the action could have been brought in the proposed transferee venue, the court then decides "whether transfer to a different forum would best serve the interests of justice and convenience." *Smart Audio,* 910 F. Supp. 2d at 724. In order to decide whether transfer would serve the interests of justice and convenience, the Third Circuit has instructed district courts to look to the various private and public interests protected by Section 1404(a) rather than to any "definitive formula." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995). The private interests may include:

> [P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but

3

only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The public interests, in turn, may include:

[T]he enforceability of the judgment: practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted). Ultimately, unless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## IV. DISCUSSION

Pursuant to the two-step analysis detailed above, the court will first address whether this action might have been brought in the forum to which transfer is sought. Umbanet contends that venue would be proper in New Jersey under 28 U.S.C. § 1391(b)(2) for two reasons. First, Umbanet argues that a substantial part of the events giving rise to the claim occurred in New Jersey because Constant Contact has admitted that it has and is currently still conducting business with EWM in New Jersey. (D.I. 10 at 12.) Second, Umbanet asserts that the issues, patents, and accused products in the instant case are the same as those currently in question in the New Jersey action pending against EWM.[3] *Id.* For its part, Constant Contact does not deny that it transacted and continues to transact business with EWM in New Jersey. (D.I. 13 at 10-11.)

---

[3] At the time Umbanet first filed the instant motion, there were other cases by Umbanet against other defendants, such as Tumi, Inc., pending in the New Jersey action. All three of these cases have since settled and have been dismissed accordingly. (D.I. 19.) Thus, the court does not explore at length the parties' contentions regarding these now-settled cases.

4

Indeed, Constant Contact admits this in its Complaint. (D.I. 1 at ¶¶ 3-5) Constant Contact also does not deny that Umbanet's case against EWM arises from the same issues, patents, and products as those relevant to the instant action. (D.I. 13 at 10-11.)[4]

The court concludes that this action could have been properly brought in New Jersey. Both Constant Contact's declaratory judgment suit and Umbanet's suit against EWM in New Jersey arise out of the use by EWM in New Jersey of Constant Contact's e-mail marketing products. (D.I. 1, 12-5849-RMB-KMW (D.N.J.); D.I. 10 at 3.) Consequently, not just a substantial part, but actually *all* of the events and omissions giving rise to the claim in question occurred in New Jersey. Since this declaratory judgment suit could have been brought in the District of New Jersey,[5] the court proceeds to weigh the *Jumara* factors.

The court begins with the private interest factors. Regarding the parties' forum choice, it is well established that "in ruling on a defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879; *see also Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request...."). It is also established, however, that when a plaintiff files suit where it is incorporated, but not physically located, its

---

[4] Constant Contact argues that "proper venue in New Jersey is *not* a factor to be considered in balancing the interests outlined by the Third Circuit." (D.I. 13 at 11 (emphasis in original).) Although Constant Contact is correct that the propriety of venue in the forum to which transfer is sought is not part of the balancing of interests, Constant Contact is incorrect to the degree it implies that the court should not inquire into whether venue in New Jersey is proper. As the case Constant Contact itself cites makes clear, whether the action could have been brought in the proposed transferee forum is the first step in the two-step inquiry of which the balancing test is the second step. *See, e.g., AIP Acquisition LLC v. iBasis, Inc.*, Civ. Action No. 12-616, 2012 U.S. Dist. LEXIS 150534, at *3 (D. Del. Oct. 9, 2012) ("The court first asks whether the action could have been brought in the proposed transferee venue and then determines whether transfer to a different forum would best serve the interests of justice and convenience.") (citation omitted).

[5] Because the parties do not contest whether a New Jersey court would have personal jurisdiction were this action to be brought there, the court deems this issue conceded. (D.I. 10 at 11-12; D.I. 13 at 10-11.)

preference is "entitled to less than the paramount consideration" ordinarily due. *See Linex Techs., Inc. v. Hewlett-Packard Co.*, Civ. Action No. 11-400-GMS, 2013 U.S. Dist. LEXIS 1924, *10 (D. Del. Jan. 7, 2013) (Explaining that when a plaintiff files suit where it is incorporated, but not physically located, its preference is "entitled to less than the paramount consideration" ordinarily due.) (Citing *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011)); *see also Microsoft Corp. v. Geotag Inc.*, 847 F. Supp. 2d 675, 677 (D. Del 2012) (Explaining regarding plaintiffs' choice of Delaware that the choice "weighs strongly in the plaintiffs' favor, although not as strongly as it would if the plaintiffs had their principal places of business (or, indeed, any place of business) in Delaware."). Constant Contact's choice of forum is Delaware, where it is incorporated, but Constant Contact's principal place of business is in Massachusetts. (D.I. 1 at ¶ 1.) Thus, the court will not accord Constant Contact's choice of Delaware deference as great as that normally shown a plaintiff's choice of forum. Umbanet's choice of New Jersey is a legitimate venue because New Jersey is where the use of Constant Contact's products by EWM that gave rise to the instant suit occurred. The court concludes that the parties' forum choice weighs slightly in favor of transfer.

Regarding whether the claim arose elsewhere, Umbanet contends that Constant Contact's claim arose in New Jersey because "the case with EWM provides the only factual support for [Constant Contact]'s claim for Declaratory Judgment." (D.I. 10 at 12.) The court agrees with Umbanet. As discussed above, *see supra* p. 4-5, both the declaratory judgment action currently at issue and Umbanet's suit against EWM in New Jersey arise out of EWM's use in New Jersey of Constant Contact's allegedly infringing products. *See Microsoft Corp.*, 847 F. Supp. 2d at 678 (Explaining that a claim seeking a declaratory judgment that a party's activities do not infringe

6

any of the defendant's patent arises wherever the party's activities are being conducted.); *see also In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (Concluding that a party's infringement arose where its allegedly infringing activities such as research, design, development, and marketing decisions occurred.); *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (Stating that "a claim for patent infringement arises wherever someone has committed acts of infringement".) (citation omitted). Accordingly, this factor strongly favors transfer to New Jersey.

In evaluating the convenience of the parties, the court considers: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio*, 910 F. Supp. 2d at 731 (citation omitted). As far as the parties' physical location is concerned, Constant Contact has its principal place of business in Massachusetts, (D.I. 13 at 2), and Umbanet has its principal place of business in New York, (D.I. 14 at 9). While, as Constant Contact argues, New York is a short train ride from the Delaware courthouse, (D.I. 13 at 14), the fact is that New Jersey is a much shorter train ride from New York. Regarding the parties' relative ability to bear the costs of travel to Delaware, there is no comparison between the parties' means. Umbanet is a one-employee operation while Constant Contact is a much larger, much more financially lucrative company than Umbanet. (D.I. 13 at 14; D.I. 14 at 9.) Indeed, Constant Contact had a market capitalization of allegedly $473,450,000 as of mid- January 2013. (D.I. 14 at 9.) The considerable financial disparity between the parties is certainly such that Constant Contact can much more easily bear the cost of leaving Massachusetts to litigate in New

7

Jersey than Umbanet can bear the cost of venturing from New York to litigate in Delaware. *See AIP Acquisition LLC v. iBasis, Inc.*, Civ. Action No. 12-616 (GMS), 2012 U.S. Dist. LEXIS 150534, *10-11 (Citing the "financial resources disparity between the parties" in concluding that "compelling AIP to litigate in Massachusetts would be more onerous than requiring iBasis to remain in Delaware.") The court concludes that this factor weighs in favor of transfer to New Jersey.

Regarding the location of books and records factor, the documents relating to the accused products and the business that Constant Contact has transacted with EWM will almost certainly come from Constant Contact. *See Microsoft Corp.*, 847 F. Supp. 2d at 678 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.") (quoting *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Presumably, Constant Contact's books and records are stored in Massachusetts, its principal place of business. Constant Contact has not specified their exact location, however, and neither party has alleged that there are books and records elsewhere that cannot be made available in Delaware. Thus, this factor is neutral. (D.I. 10 at 13; D.I. 13 at 13-14.) The convenience of the witnesses is likewise neutral because neither party has alleged that there are any witnesses who cannot be made available in either Delaware or New Jersey. (*Id.*)

Having considered the private interest factors, the court now proceeds to weigh the public interest factors. The court concludes that judicial efficiency and New Jersey's interest in the action weigh in favor of transfer.[6] As Umbanet observes, the ongoing New Jersey action

---

[6] The remaining public interest factors are neutral. There is no indication that the docket congestion in New Jersey is considerably greater than in Delaware, or vice versa, and state law is not at issue in either of the actions.

between Umbanet and EWM involves "the same patents, the same technology, the same prior art, and the same accused product" as the instant action. (D.I. 10 at 13.) Since the action was stayed for much of 2013, (D.I. 40, Civ. Action No. 12-5849-RMB-KMW (D.N.J.)), it may be an overstatement to claim, as Umbanet does, that it is "much more efficient for the New Jersey Court to preside over this dispute". Nonetheless, limited discovery did proceed during the stay, (*Id.*), and the New Jersey court lifted the stay in January 2014, (D.I. 59 and D.I. 69-1, 12-5849-RMB-KMW (D.N.J.)). Now that the stay has been lifted, full discovery continues and the claim construction process has commenced and is well underway. (D.I. 59 and D.I. 69-1, 12-5849-RMB-KMW (D.N.J.).) Consequently, the New Jersey action is now proceeding at a reasonable pace and there is some efficiency to be achieved in allowing that process to continue without the interruption and potential conflict of a parallel proceeding before this court.

Just as judicial efficiency favors transfer of this action to New Jersey, so too does New Jersey's interest in this matter. New Jersey has an interest in this matter because the underlying use by EWM of Constant Contact's alleged infringing product occurred in New Jersey and is currently being litigated in New Jersey. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.") Delaware, in comparison, has a more tenuous interest in the instant matter. As Umbanet aptly notes and Constant Contact does not dispute, the only connection this action has with Delaware is the fact that both parties are incorporated here. (D.I. 10 at 13.) While, as Constant Contact argues, Delaware's interest in adjudicating disputes between Delaware

corporations is ordinarily strong, this interest is mitigated by the fact that both defendants have their headquarters elsewhere. *See, e.g., McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 12-1508-LPS-CJB, 2013 U.S. Dist. LEXIS 178823, *50 (D. Del. Dec. 13, 2013) (Concluding that Delaware's strong interest in a dispute between Delaware corporations was "counterbalanced here by the fact that Defendants and [Plaintiff] are all headquartered in or near the Central District [of California].") Ultimately, the court concludes that both New Jersey's interest in this matter and judicial efficiency militate in favor of transfer to New Jersey.

## V. CONCLUSION

Considering the *Jumara* factors as a whole, the court believes that Umbanet has met its burden of demonstrating that the interests of justice and convenience strongly favor transfer. Thus, the court will grant Umbanet's Motion to Transfer to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

Dated: March 12, 2014

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONSTANT CONTACT INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 12-1467-GMS |
| UMBANET INC., | ) ) ) | |
| Defendant. | ) ) | |

## ORDER

At Wilmington, this 12th day of March, 2014, consistent with the Memorandum Opinion issued this same date, IT IS HEREBY ORDERED THAT:

1. Umbanet's Motion to Transfer to the District of New Jersey is GRANTED; and

2. The above-captioned action is transferred to the U.S. District Court for District of New Jersey.

CHIEF, UNITED STATES DISTRICT JUDGE